IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH YAMRUS, | : |
| | : CIVIL ACTION |
| Plaintiff | : |
| | : |
| v. | : NO.   08-2842 |
| | : |
| TOWNSHIP OF WASHINGTON, | : |
| DANIEL C. COTTURO, JR., in his | : |
| individual capacity, and POLICE | : |
| OFFICER SCOTT E. MILLER, in | : |
| his individual capacity, | : |
| | : |
| Defendants | : |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                        November 20, 2008

Joseph Yamrus flies an American flag upside-down flag in his front yard. On June 11, 2007, Washington Township police officer Scott Miller told Yamrus to remove the flag or fly it right-side-up.  When Yamrus refused to remove the flag (because it was an expression of his political opinions), Miller cited him for violating a Pennsylvania statute that prohibits insulting the flag ("flag statute").[1] Later, the criminal charges were dismissed, but Yamrus filed this lawsuit requesting declaratory relief and damages. He

---

[1]Specifically, 18 Pa.C.S.A. § 2103 provides, "A person is guilty of a misdemeanor of the second degree if he maliciously takes down, defiles, injures, removes or in any manner damages, insults, or destroys any American flag or the flag of the Commonwealth which is displayed anywhere."

alleges that defendants Township of Washington, Police Chief Daniel C. Cotturo and Officer Miller (collectively "defendants") violated his constitutional rights.[2]

Defendants filed a motion to dismiss arguing that (1) no case or controversy exists, (2) official immunity protects defendants Cotturo and Miller, and (3) that the complaint lacks (a) allegations of Cotturo's supervisory authority over Miller, (b) allegations of Township's policy or practice, (c) allegations of an injury under § 1983, and (d) allegations of constitutional deprivation.

Based on the following discussion, I will grant defendants' motion, in part, and deny it, in part.

I.  **BACKGROUND**[3]

Yamrus filed this case on June 18, 2008, alleging that defendants violated his federal and state constitutional rights. The complaint states that Yamrus flies an upside-down flag at his Washington Township home as "a political statement. . . specifically directed at conduct by certain members of Congress." Compl. ¶ 11 (Document #1). In response to a civilian complaint about Yamrus's flag display, defendant Miller took photographs of the flag at Yamrus' home, left a phone message demanding Yamrus remove the flag or fly it upright, and charged him with violating the flag statute on June

---

[2]Specifically, Yamrus alleges that the First and Fourteenth Amendments of the U.S. constitution, as well as Art. I, §§ 1 and 7 of the Pennsylvania constitution were violated.

[3]The following background facts are derived from Yamrus's complaint.

21, 2007. Compl.¶ 11-24 (Document #1). On July 12, 2007, the charge was dropped. Compl. ¶ 27, (Document #1). Defendants filed the instant motion to dismiss on August 15, 2008. Yamrus filed his Memorandum of Law in Opposition to Defendants' Motion to Dismiss on September 15, 2008.

## II. STANDARD FOR A MOTION TO DISMISS

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). When considering a motion to dismiss, courts must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008); Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996). Courts look only to the facts alleged in the complaint and not to matters extraneous to the pleadings in deciding a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). Under Fed. R. Civ. P. 8(a)(2), the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The statement must provide to defendant "fair notice of what the . . .claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, --- U.S. ---, 127 S.Ct. 1955, 1964 (2007); see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944

(3d Cir. 1984).

Establishing that no possible claim has been presented is the defendants' burden at this stage.  Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988). Courts, however, will not accept as true "bald assertions" or "vague and conclusory allegations." See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern Pa. Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995).

### III.   DISCUSSION

#### A.   A controversy exists.

In determining whether a case or controversy exists in a declaratory judgment action, a three-step test is used.  First, we must look to the adversity of interest between the parties.  Second, we must ascertain the conclusiveness that a declaratory judgment would have on the legal relationship between the parties.  Third, we must determine the "practical help, or utility" of a declaratory judgment. Step-Saver Data Systems, Inc. v. Wyse Technology, 912 F.2d 643, 647 (3d Cir. 1990).

Here, the parties have adverse legal interests.  Yamrus has alleged that defendants have an apparent and ongoing interest in requiring him to cease his political expression and remove the flag from his yard or fly it right-side-up. Yamrus has flown and continues to fly an upside-down flag in his front yard.  He has been threatened with prosecution for his display and he was actually charged.  He has alleged that there exists a real and

immediate threat of enforcement against him. It is sufficient for Article III purposes that Yamrus has alleged that he intends to engage in the prohibited conducted and that his fear is more than "imaginary or speculative." Spencer v. Honorable Justices of the Sup. Ct. of Penn., 579 F.Supp. 880, 883 (3d Cir. 1985). Yamrus was prosecuted for violating the flag statute, a criminal complaint was filed against him and he continues to display the flag in a manner defendants deem to be unlawful. Further, defendant Miller continues to defend his alleged constitutional deprivations, regardless of whether they constitute constitutional violations.

It is not necessary that Yamrus have suffered a completed harm such as criminal conviction or a cease-and-desist order in order to establish such adversity. Armstrong World Industries, Inc. v. Adams, 961 F.2d 405 (3d Cir. 1992) (citing Pacific Gas & Elec. Co. v. State Energy Resource Conservation & Dev. Comm'n, 461 U.S. 190, 201, 103 S.Ct. 1713, 1720, 75 L.Ed.2d 752 (1983)). In Presbytery of New Jersey of the Orthodox Presbyterian Church v. Florio, et al., 40 F.3d 1454, 1467 (3d Cir. 1994), defendants argued that "the case is not ripe absent an actual prosecution." The Third Circuit stated, however, "That is not the law." The U.S. Supreme Court has held that a controversy exists and is ripe for review when a plaintiff seeks to exercise his First Amendment right to freedom of expression. Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). In fact, it is not necessary that Yamrus even have been arrested or cited for exercising his constitutional rights. Id. It is sufficient that Yamrus has alleged that a

statute exists, that defendants have the power and intent to enforce it and that Yamrus wishes to express his political ideas in a way he believes constitutionally protected. Step-Saver, 912 F.2d at 649, n. 7.

In their pleadings, defendants have chosen not to disclaim intent to prosecute or waived enforcement of the statute against Yamrus. Defendants offer only the district attorney's position: he "has made it clear his belief is that he would not pursue such charges against the Plaintiff." (Brief in Support of Defendants' Motion to Dismiss, 1Document #7, page 10). Defendant Miller's published letter in the newspaper suggests that he will continue to respond to complaints from citizens who feel insulted by expressive activity by acting as a mediator and searching for a way to curb such offensive expressions. Miller has made public his intent to curb Yamrus' "insulting" speech regardless of whether the means required are unconstitutional. Therefore, Yamrus has sufficiently alleged that the probability of his future prosecution or chilling of his expressive activity is real and substantial and "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Armstrong, 961 F.2d at 412 (citing Salvation Army v. Department of Community Affairs, 919 F.2d 183, 192 (3d Cir. 1990); Pacific Gas & Elec. Co., 461 U.S. at 201.

Further, Yamrus is seeking monetary damages in addition to declaratory relief for injuries that he alleges have already occurred. In other words, Yamrus has pleaded that there exists a completed harm in this case. He alleges that he suffered harm including

legal costs and expenses as a result of hiring an attorney to defend the charge of violating the flag statute.  While defendants' motion to dismiss disputes these facts, such factual disputes are matters for juries to decide and not relevant at this stage of the litigation.  At this motion to dismiss stage, what *is* relevant is that several courts, including the Third Circuit, have held that justiciability challenges are survived where damages are sought.  See Policastro v. Kontogiannis, 262 Fed. Appx. 429, 434 n. 5 (3d Cir. 2008) (citing Boag v. MacDougall, 454 U.S. 364 (1982)); Donovan v. Punxsutawney Area Sch. Bd., 336 F.3d 211, 216 (3d Cir. 2003); Jersey Cent. Power & Light Co. V. New Jersey, 772 F.2d 35, 41 (3d Cir. 1985).

Yamrus has sufficiently satisfied the second part of the test because a declaratory judgment issued in this case would be "sufficiently conclusive to define and clarify the [plaintiff's] legal rights."  Step-Saver, 912 F.2d at 648.  A declaratory judgment in this case would not be an advisory opinion based on hypothetical facts; it would determine whether the flag statute affects Yamrus' fundamental right of free speech protected by the First Amendment.  A determination by this court that the statute on its face and as applied to Yamrus violates his constitutional rights would foreclose the likelihood - which he alleges persists to the present - that he will be charged and prosecuted for flying flags upside down as an expression of his political opinions.  A declaratory judgment would establish conclusively whether his expression is protected or prohibited by the statute.

Finally, a declaratory judgment would provide "practical help, or utility" in enabling "the parties to preserve the status quo before irreparable damage [is] done." Step-Saver, 912 F.2d at 649. A declaratory judgment would allow both Yamrus and defendants "to make responsible decisions about the future." Id.  It would allow Yamrus to decide whether to risk prosecution and criminal punishment for flying his flags upside-down.  It would allow defendants to determine whether Yamrus' conduct is protected by the U.S. constitution and/or Pennsylvania constitution or criminalized by state law, and therefore punishable.  In short, a declaratory judgment would end the ongoing controversy with respect to whether Yamrus' actions are protected or prohibited.

In fact, defendant Miller himself believes that a declaratory judgment would be helpful in the present case.  In his published letter to the local newspaper regarding his enforcement of the flag statute against Yamrus, Miller wrote, "is this the kind of decision . . . that should be left to a police officer or even a district attorney, for that matter?  I would much prefer the courts or the Legislature decide . . ."  Additionally, defendants have stated that Yamrus' right to display his flag is "far from defined by the Courts," highlighting the fact that Yamrus continues to face the possibility of prosecution and that declaratory relief may be useful to defendants in making responsible decisions about the future.

**B. The controversy is ripe.**

Unlike the cases (not controlling) defendants cite,[4] in this case there has been no sworn assurance in the pleadings that the Pennsylvania flag statute will not be enforced against Yamrus. At this stage, I am required to look only to the facts alleged in the complaint and not to matters extraneous to the pleadings. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); In re Burlington Coat Factory, 114 F.3d at 1426. As defendants have pointed to nothing more than the Northhampton County District Attorney's statement to a presiding judge that it would not prosecute the pending charges against Yamrus to suggest that he faces no actual risk of future prosecution, Yamrus has alleged a ripe controversy.[5]

**D. Defendants are not entitled to official immunity.**

As an initial matter, it is important to note that qualified immunity is an affirmative defense. Therefore Yamrus did not need to anticipate and plead a response to that defense in his complaint. Kosta v.Connolly, 709 F.Supp. 592, 595 (E.D. Pa. 1989); Thomas, A.T.W., Inc. v. Independence Township, 463 F.3d 285, 289 (3d Cir. 2006)

---

[4] Winsness v. Yocom, 433 F.3d 727 (10th Cir. 2006) and Mink v. Suthers, 482 F.3d 1244 (10th Cir. 2007). The third case defendants cite appears to stand only for the proposition that repeated arrests alone are not sufficient to establish a case or controversy. Although Defendants would prefer to read it as suggesting a rule that dropped charges automatically means there is no case or controversy or that a repeated pattern of arrests is the only situation in which a case or controversy exists, that is not what the Fifth Circuit held in Reed v. Giarrusso, 462 F.2d 706 (5th Cir. 1972).

[5] At a Rule 16 conference, defendants' attorney stated that Yamrus would not be charged or prosecuted under the flag statute in the future. That statement, if true, may mean that there actually exists less of a controversy (or any controversy) than Yamrus has described. While I believe counsel's representation, it is not a matter of record and I am constrained to decide the motion to dismiss on the allegations in the complaint.

(holding that plaintiff has "no pleading burden to anticipate or overcome a qualified immunity defense").  At this stage, Yamrus has met his burden of merely pleading that defendants violated his established constitutional right.  255 Latimer Deli, Inc. v. Clarke, No. 07-3853, 2008 WL 2790205, at 4 (E.D.Pa., July 17, 2008).  Discovery will resolve the necessary factual disputes in order to determine whether defendants' conduct violated a clearly established right.

In this case, however, it appears the police officers' official immunity may be overcome because (1) the facts, taken in the light most favorable to Yamrus, show the officers' conduct violated his constitutional rights; and because (2) the contours of Yamrus' rights are sufficiently clear that a reasonable official would understand that what defendants Cotturo and Miller did violates those rights.  Forbes v. Township of Lower Merion, 313 F.3d 144, 148 (3d Cir. 2002) (quoting Saucier v. Katz, 533 U.S. 194 (1975) and Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Here, Yamrus has alleged that he had a protected liberty interest in his expressive speech.  He has alleged that he was ordered by defendants to cease that protected expression or face prosecution.  After explaining to Miller the reason for his political expression, he was subsequently charged with violating a statute which defendants claim prohibits that expressive conduct.

The First Amendment principles protecting expressive conduct are clearly established.  Although a prior decision on the constitutionality of the precise statute

Miller construed to prohibit Yamrus' expressive conduct does not exist, the principles set down in several U.S. Supreme Court decisions support Yamrus' actions.  First, in 1943, the Supreme Court determined that utterances showing disrespect for the U.S. flag are protected by the First Amendment.  Taylor v. State of Mississippi, 319 U.S. 583, 63 S.Ct. 1200, 87 L.Ed. 1600 (1943).  Then, in 1969, the Supreme Court held that a statute which made it a crime to publicly destroy, cast contempt on or defile an American flag cannot, under the U.S. Constitution, be applied so as to criminalize mere speech concerning the flag.  Street v. New York, 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969), on remand to, 24 N.Y.ed 1026, 302 N.Y.S.2d 848, 250 N.E.2d 250 (1969).  Almost a decade ago, the U.S. Supreme Court determined in the widely-reported case of Texas v. Johnson, 491 U.S. 397, 405 (1989) that even the *burning* of the American flag as part of a political demonstration is expressive conduct protected by the U.S. constitution.[6]

---

[6]In addition to these publicized Supreme Court decisions, a number of law review articles focus on the decisions' protection of expressions that involve the American flag.  See, e.g., Paul A. Baier, O'er the Land of the Free: Flag Burning and the First Amendment, 56 La. L.R. 497 (1996);  Keith A. Darling, Flag Burning: Johnson, Eichman and Beyond, 3 Appalachian J.L. 101 (2004); D. Wes Sullenger, Burning the Flag: A Conservative Defense of Radical Speech and Why it Matters Now, 43 Brandeis L.J. 597 (2005).  Additionally, for several decades, these judicial "flag-burning" decisions have been featured in popular media and country music.  See, e.g., Merle Haggard's lament in Me and Crippled Soldiers, on BLUE JUNGLE (Curb 1990) ("Now that it's all right to burn the stars and stripes . . . Today they ruled to burn Old Glory down"), a Johnny Cash song, Ragged Old Flag, on RAGGED OLD FLAG (Sony 1974) ("In her own good land here she's been abused / She's been burned, dishonored, denied and refused"), a Marty Robbins song, Song of the Patriot, on COUNTRY PRIDE (Sony 2002) ("when I see old Glory burnin'/ My blood begins to churnin' / And I could do some fightin' of my own").  In 2004 at the Country Music Awards, Eddie Montgomery (of the music group Montgomery Gentry) reportedly wore a jacket that displayed an American flag and the words "Try and Burn This One."  See, e.g., http://www.ew.com/ew/article/0,,780749,00.html.  While these cultural expressions reveal that federal court decisions protecting the right to insult the flag have met with mixed and sometimes

In the present case, Yamrus' demonstration did not involve burning or otherwise damaging or altering the material of the flag; he merely displays the flag upside-down. However it is not necessary that the facts be identical in order for a principle to be clearly established; there need only be "some but not precise factual correspondence between relevant precedents and the conduct at issue," Pro v. Donatucci, 81 F.3d 1283, 1292 (3d Cir. 1996).

Therefore, if the facts asserted by Yamrus are true, a reasonable officer in Miller's position could not have applied the well-established First Amendment principles to the situation he encountered in Yamrus' front yard and concluded that silencing Yamrus' message was justified by the flag statute or even the fact that a woman who had driven by the property felt offended. It would have been apparent to a reasonable officer (particularly given the number of days Miller had to consult and research prior to charging Yamrus) that requiring removal of the flag display would violate free speech rights. Therefore, under the facts as alleged by Yamrus, it appears that Miller is not entitled to official immunity.

Defendants are incorrect that requiring Cotturo to train and supervise Miller so that he does not violate a basic right guaranteed in the First Amendment to the U.S. Constitution is an "impossible burden." Yamrus' allegation that Cotturo failed to train

---

negative reactions, they also show how widely known the Court's jurisprudence on the issue really is, even among non-jurists.

Miller in such a basic, well-defined principle of constitutional law is sufficient. Yamrus alleges that Miller construed what defendants' call "an obscure provision of the Pennsylvania Crimes Code" to criminalize Yamrus' expressive conduct because someone driving by felt offended. These carefully planned activities spanning several days suggest that Miller was not trained properly. The complaint alleges that Cotturo was the official responsible for training and supervising Miller. Yamrus alleges that Cotturo failed to train Miller and the other officers properly to prevent them from retaliating against citizens exercising their First Amendment rights. Yamrus contends that Cotturo's failure to train amounted to deliberate indifference to Yamrus' constitutional deprivations. Therefore, Cotturo is not entitled to immunity.

### E.    Plaintiff has sufficiently alleged Cotturo's supervisory authority over Miller.

To plead supervisory authority properly and survive a motion to dismiss with respect to that issue, plaintiffs alleging § 1983 injuries must (1) identify a failure to provide specific training that has a causal nexus with the injury suffered and (2) demonstrate that the failure to provide the training can reasonably be said to reflect a deliberate indifference to whether constitutional deprivations of the kind alleged occur. Torres v. McLaughlin, No. 96-5865, 1996 WL 680274 at 9 (E.D.Pa. Nov. 21, 2006) (citing Colburn v. Upper Darby Township, 946 F.2d 1017, 1030 (3d Cir. 1991)). While defendants cite cases in support of their motion to dismiss the claims against Cotturo,

those cases explain what must be established in order for liability to be imposed at the summary judgment or later stages of litigation.

Yamrus has alleged that Cotturo was "the duly appointed Chief of the Washington Township Police Department" who was "responsible for the supervision and training" of defendant Miller.  The complaint also alleges that "Chief Cotturo. . . failed to provide the training necessary to instruct Officer Miller that, as a police officer, he should not issue criminal citations to people for expressing their political views and that he should treat their constitutional rights of free expression as superior to conflicting statutory authority."  Further, the complaint alleges that Cotturo's failure amounts to deliberate indifference to Yamrus' constitutional deprivations and explains the aspects of his arrest and investigation.  Finally, the complaint alleges seven (7) different actions by defendant Miller which demonstrate his deliberate indifference.  These actions by Miller, Yamrus alleges, show defendant Cotturo's failure to supervise him.  Compl., Document # 1, ¶¶ 13, 15, 16, 17, 18, 20, and 30.

These allegations are sufficient to show Cotturo's supervisory authority and for Yamrus to survive this motion to dismiss.  In order to determine whether Yamrus can satisfy the five-part test for supervisory authority under § 1983, <u>Brown v. Muhlenberg Township</u>, 269 F.3d 205, 216 (3d Cir. 2001), he must be permitted to proceed with discovery.

    **F.**    **Yamrus Has Not Alleged a Claim Against Township.**

Yamrus failed to allege a claim against the Township. He merely alleged that Township is the municipality which employs and operates the Police Department and that Township's failure to train the individual defendants resulted in the violation of his rights. However, the complaint does not allege a "custom, policy or practice" which is the required showing under <u>Monell v. New York City Dep't of Social Services</u>, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) to establish § 1983 liability. Therefore, viewing the facts alleged in the complaint, it appears that he has stated no claim against Township for which relief may be granted.

## IV.  CONCLUSION

For the foregoing reasons, defendants' motion to dismiss to dismiss is **DENIED** except as to the <u>Monell</u> claim against the Township. Therefore, both Counts I and II will be dismissed as to defendant Township of Washington.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JOSEPH YAMRUS, | : | |
|  | : | CIVIL ACTION |
| Plaintiff | : | |
|  | : | |
|  | : | NO.   08-2842 |
|  | : | |
| TOWNSHIP OF WASHINGTON, DANIEL C. COTTURO, JR., in his individual capacity, and POLICE OFFICER SCOTT E. MILLER, in his individual capacity, | : | |
|  | : | |
| Defendants | : | |

**O R D E R**

AND NOW, this 20th day of November, 2008, upon consideration of Defendants' Motion to Dismiss (Document #6), and plaintiff's response thereto, it is hereby **ORDERED** that the motion is **GRANTED, in part, and DENIED, in part** as follows:

(1) Defendants' motion to dismiss defendant Township of Washington is **GRANTED**, and Counts I and II as to that party are **DISMISSED**

**WITHOUT PREJUDICE**.

(2)   Plaintiff shall have twenty (20) days from the date of this Order to file an Amended Complaint containing a proper factual basis for his claims against the Township of Washington.

(3)   Defendants' motion to dismiss Counts I and II, as against Officers Scott Miller and Daniel Cotturo, is **DENIED WITHOUT PREJUDICE**.

BY THE COURT:


 /s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.